# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JASON URIAN FLOW,              )
                           Plaintiff,    )
v.                                  )     Case No. CIV-09-1262-F
                                  )
LT. THOMAS, Shift Commander;    )
CORY GREEN, Detention Officer;    )
LT. HANSEN, Shift Commander;    )
LT. FINLEY, Shift Commander;    )
OFFICER CLANAHAN, Detention Officer;    )
JOHN WHETSEL, Sheriff;    )
SERGEANT REEVES, Supervisor, 2nd Floor;    )
COUNTY OF OKLAHOMA COUNTY;    )
OKLAHOMA COUNTY SHERIFF'S    )
OFFICE; and OKLAHOMA COUNTY    )
DETENTION CENTER,    )
                          Defendants.  )

## REPORT AND RECOMMENDATION

Plaintiff, Jason Urian Flow, a state prisoner appearing *pro se* and *in forma pauperis*, has filed a Complaint seeking redress for alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. The matter has been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The Defendants have filed Motions to Dismiss, *see* Doc. ## 22-29, currently pending before the Court. In addition, the Court has received a Special Report [Doc. # 20] and Supplemental Exhibits to Special Report [Doc. #21].

Plaintiff has been given the opportunity to respond to Defendants' Motions, *see* Orders [Doc. ## 30, 31], but has failed to do so.[1]  For the reasons set forth below, it is

---

[1]When the Clerk of Court mailed the orders to Plaintiff at the Oklahoma County Detention Center – the address provided in the Complaint – the orders were returned to the Clerk as "undeliverable." *See* Doc. ## 32, 33. It appears, therefore, that Plaintiff is no longer incarcerated
(continued...)

recommended that Defendants' Motions, construed in part as motions for summary judgment, be granted.

## I.     Factual Background / Plaintiff's Claims

At the time the incidents which form the basis of the claims raised in the Complaint occurred, Plaintiff was incarcerated at the Oklahoma County Detention Center (OCDC). Although his status is not abundantly clear from the record provided, it appears he was incarcerated as a pretrial detainee.[2]

Because Plaintiff's allegations are considerably vague and somewhat conclusory, the Court has looked to the Special Report to aid in the liberal construction of Plaintiff's claims and to determine the factual bases for those claims. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any

---

[1](...continued)
at the Oklahoma County Detention Center.  Plaintiff has not, however, filed a notice of change of address with the Court.

[2]The Special Report states that Plaintiff entered a guilty plea in Case No. CF-06-4725, District Court of Oklahoma County, State of Oklahoma on February 5, 2010.  *See* Special Report at 10 *citing id.,* Exhibit 6, Docket, Case No. CF-06-4725, District Court of Oklahoma County, State of Oklahoma.  The Special Report indicates that Plaintiff had multiple criminal charges against him at various stages of proceedings.  The Special Report further indicates Plaintiff had been in and out of the OCDC a number of times over a period of the last six or more years.  *See, e.g,* Special Report, Exhibit 9 at electronic page 19 ("Inmate Jason Flow has been in and out of our jail for past 6 years.").

factual or legal bases for the prisoner's claims.") (*citing Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir.1978)).

### A.    Excessive Force Claims

In Count I, Plaintiff alleges he was subject to cruel and unusual punishment and excessive use of force when he was restrained to a chair and bed, resulting in contusions on his ribs.  He further alleges he was assaulted by Defendant Green and "held down [and] sprayed directly in [his] eyes."

The Special Report shows the incident about which Plaintiff complains in Count I occurred in December 2008.  The Special Report includes a report prepared by Defendant Green summarizing the incident about which Plaintiff complains, as well as reports prepared by other officers involved in the incident, though not named as defendants in this action. According to these reports, Plaintiff was standing on the top bunk of his cell threatening to jump.  He ignored officers' commands to get down off the bunk.  After officers assisted him down, Plaintiff resisted being hand-cuffed.  Officers restrained him to effect the cuffing. Plaintiff was then taken to the medical unit.  After being cleared for any injuries, Plaintiff was placed in restraints and put on suicide prevention watch.  *See* Special Report, Exhibit 12.

In Count III, Plaintiff brings another claim of excessive force.  Plaintiff alleges that after he "popped" a sprinkler head, Defendant Thomas shot him with a pepper ball gun. Plaintiff does not allege in the Complaint when this incident occurred.  However, the Special

Report shows the incident occurred in February 2009. *See* Special Report, Exhibit 9. Defendant Thomas completed a report detailing the incident. In a period of two hours, Plaintiff had twice broken the sprinkler head in his cell causing water to run into the cell. In addition, Plaintiff had recently been found to have metal shanks in his possession. When officers approached Plaintiff's cell after the second sprinkler head incident, they carried with them a "SA-4 pepperball system." When Plaintiff refused orders to go to the back of his cell and get down, the pepperball system was deployed. Plaintiff was hit in the right shoulder and suffered a "quarter size wound/ bruise. *See* Special Report, Exhibit 9.

In correspondence attached to the Complaint, Plaintiff makes reference to a third incident of alleged excessive force involving Defendant Clanahan. Plaintiff alleges Defendant Clanahan sprayed him directly in the eyes and pinned his arm. Although once again, Plaintiff provides no dates, the Special Report establishes this incident occurred in June 2009. *See* Special Report, Exhibit 14.

### B.      Access to Courts Claim

In Count II of the Complaint Plaintiff claims he has been denied access to the courts. In support of this claim, Plaintiff makes the following allegations:

> Lt. Hanson know for a fact I was vidio [sic] arraigned and was allowed to speak to Judge Hall to explain I was in coustody [sic] at Griffin Memorial Hospital on the day of March 30, 2009, only to be released on March 31, 2009 by a doctor.

*See* Complaint [Doc. #1] at electronic page 4. Plaintiff also attaches to the Complaint a handwritten note dated November 9, 2009, wherein he complains that he had two court

appearances on the same date, April 7, 2009, that the Oklahoma County Sheriff's Office denied him access to the courts on that date and that he was "falsely represented" by a public defender. *See* Complaint at electronic page 12. In that same handwritten note, he again references a March 30, 2009 court date and states that he was in custody.

From submissions included in the Special Report, it appears Plaintiff was charged with a failure to appear at a March 30, 2009 court date. It further appears Plaintiff had a video arraignment on April 7, 2009. *See, e.g.,* Special Report, Exhibit 18, Statement of Lt. Hansen; *see also id.*, Exhibit 20, Report by Danny Honeycutt.

## II.  Named Defendants and Relief Sought

Plaintiff names the following Defendants: Oklahoma County, Oklahoma County Sheriff's Office, Oklahoma County Detention Center, Lt. Thomas, Cory Green, Lt. Hansen, Lt. Finley, Officer Clanahan, Sheriff Whetsel, and Sgt. Reeves. As relief, Plaintiff seeks "3.0 million dollars" for mental anguish, pain and suffering.

## III.  Standard of Review

Defendants move for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). To survive a motion to dismiss, the allegations contained in the complaint "must be enough that, if assumed to be true, the plaintiff plausibly (not just

speculatively) has a claim for relief ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (footnote omitted).

As discussed below, to the extent Defendants have relied on matters outside the pleadings, the Court has construed the motions to dismiss as motions for summary judgment. *See* Fed. R. Civ. P. 56. Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

As noted, Plaintiff has failed to respond to Defendants' motions though he was provided the opportunity to do so and was given notice that Defendants' motions could be converted to motions for summary judgment. Accordingly, the facts provided in the Special Report and relied upon by Defendants are undisputed by Plaintiff. Significantly, the undisputed facts material to resolution of the issues presented to the Court are not controverted by allegations of the Complaint.

**IV.     Analysis**

Although Defendants have separately moved for dismissal, Defendants seek dismissal on virtually identical grounds.  In the interests of judicial economy, therefore, the Court addresses Plaintiff's claims against the Defendants collectively, where appropriate.

Defendants seek dismissal of Plaintiff's claims on grounds of failure to exhaust administrative remedies and qualified immunity.  As to the latter defense, Defendants contend Plaintiff has failed to demonstrate a violation of his constitutional rights.

**A.     Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a mandatory exhaustion requirement exists for inmates challenging prison conditions in federal court.[3] In raising the affirmative defense of Plaintiff's failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a), Defendants have relied upon materials outside the pleadings.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA . . . ."). Therefore, Defendants' motion to dismiss is construed as a motion for summary judgment for purposes of the exhaustion defense.  *See* Fed. R. Civ. P. 56.

---

[3]Section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

When an affirmative defense is raised in a motion for summary judgment, the defendant must demonstrate that "no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

A prisoner properly exhausts administrative remedies by completing the administrative review process as defined by the prison grievance system. *Jones v. Bock*, 549 U.S. at 217. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*, 127 S.Ct. at 923. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, "[t]o exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). If, however, prison officials fail to timely respond to a prisoner's grievance or otherwise thwart a prisoner's compliance with the prison's grievance procedures, the prisoner may be deemed to have complied with the exhaustion requirement. *Jernigan*, 304 F.3d at 1032.

### 1.     The OCDC's Grievance Procedure

The Special Report contains two operational policies of the OCDC. *See* Special Report, Exhibit 2 (Inmate Grievance Procedure) and Exhibit 3 (Inmate and Staff Communications /Request to Staff). Pursuant to these procedures, an inmate must first attempt to resolve issues by talking informally with an appropriate employee. If the issue is not resolved through that communication, the inmate may then submit a Request to Staff. Exhibit 2, ¶ III(B)(1). The Request to Staff must be submitted within fifteen calendars days of the incident. *Id.*, ¶ III(B)(3). The Request to Staff must be responded to in writing within five days of receipt. *Id.*, ¶ III(C)(1). If the matter is not resolved informally through the verbal or Request to Staff process, the inmate may then submit an Inmate Grievance Form. *Id.*, ¶ IV(A). The formal grievance must be submitted within fifteen days of the incident or the receipt of the answer to the Request to Staff. *Id.*, ¶ IV(C). The grievance must be answered and returned to the prisoner within fifteen working days of receipt of the grievance. *Id.*, ¶ V(D)(1). An appeal of the grievance may be taken to the Jail Administrator. *Id.*, ¶ VI. The ruling of the Jail Administrator is final and completes the administrative process. *Id.*, ¶ VI(D).

The OCDC grievance procedure expressly provides that a permanent log shall be maintained of all Requests to Staff submitted. The log shall note the receipt of the Request to Staff form, and the action taken in response to the Request to Staff must be documented. *Id.* ¶ V(B). In addition, the grievance procedure provides that "All inmate 'Request to Staff' records shall be maintained in the inmate's file." Exhibit 3, ¶ VI(A). Similarly, the inmate

grievance procedure provides that a log will be maintained for all grievances submitted. Exhibit 2, ¶ V.

## 2. Plaintiff's Grievance History at OCDC

Submitted with the Special Report is the Affidavit of Chris Hendershott, an employee of the Sheriff's Office of Oklahoma County, responsible for coordinating, recording and documenting all formal grievances filed by inmates detained at the OCDC. *See* Special Report, Exhibit 5, Hendershott Affidavit, ¶1. Hendershott identifies nine grievances submitted by Plaintiff during the relevant periods of incarceration at OCDC. *See id.* at ¶¶ 10-11. *See also* Special Report, Exhibit 4, Plaintiff's Grievances.

### a. Grievances Related to Claims of Excessive Force

Of those nine grievances, two relate to Plaintiff's claims of excessive force. Neither of these two grievances, however, address the incident of alleged excessive force in December 2008, as raised in Count I of the Complaint. Accordingly, Plaintiff has failed to comply with § 1997e(a)'s exhaustion requirement as to Count I, and that claim should be dismissed for failure to exhaust administrative remedies.

The first grievance submitted by Plaintiff involving a claim of excessive force is dated May 14, 2009, and relates to the excessive force claim raised in Count III of the Complaint. That grievance states: "I have been beaten, shot, starved, discriminated for my personal religious beliefs and am political prisoner for being disabled mentally."*See* Special Report,

Exhibit 4 at electronic page 9. As relief, Plaintiff requests an investigation by the Federal Bureau of Investigation (FBI).[4]

The grievance appears to have been received by OCDC officials on July 9, 2009. The response to the grievance does not state either that relief is being granted or that the grievance is being denied. Instead, the response states that the grievance would be forwarded to Internal Affairs. *See* Special Report, Exhibit 4 at electronic page 10.

On July 10, 2009, the Oklahoma County Sheriff's Office Internal Affairs Unit investigated the incident. *See* Special Report, Exhibit 9 at electronic page 19. The investigator, Jason Bass, completed a "Narrative" of the investigation. The Narrative begins with Bass stating:

> On Monday, July 13, 2009, on or about 1300 hours, I went to 4D pod to speak with INMATE JASON FLOW about his 'Inmate Grievance" form he completed and submitted to the OCSO detention staff.

*See id*. Thus, the Internal Affairs investigation was clearly a response to Plaintiff's grievance. With respect to Plaintiff's excessive force claim, the Narrative states the following:

---

[4]In his Motion to Dismiss, Defendant Green notes Plaintiff's reference to being "beaten" in the grievance filed on May 14, 2009 as a possible reference to the December 2008 incident. The record, however, indicates Plaintiff was referencing the incident with Defendant Thomas in February 2009.

Moreover, the Special Report shows that in February 2009, the Oklahoma County Sheriff's Office Internal Affairs Unit investigated the December 16, 2008 incident. The investigation was prompted by a complaint Plaintiff filed with the Oklahoma City Police Department. No action was taken because Plaintiff did not file a formal complaint with the Oklahoma County Sheriff's Office. *See* Special Report, Exhibit 12.

I asked inmate [F]low how the detention officers abused him. His response was the first time he was on 12D administrative/segregation lockdown after he broke the sprinkler head in his cell. He told me that Lieutenant Thomas shot him with a pepper ball gun with no provocation. I asked him if Lt. Thomas asked him to do something and he refused to do it. Inmate Flow said he asked me to get on the ground, but the ground was wet. Disregarding an order is within our policy to use non-lethal force.

*See id.*

The Narrative makes clear that Plaintiff's complaint of excessive force against Defendant Thomas was deemed to be without merit and, therefore, that his grievance was being denied.[5] However, Plaintiff took no further steps toward exhausting this claim. He did not file an appeal of the grievance. Nor did he file any additional grievances pertaining to the matter. Accordingly, the Court finds the claim asserted in Count III of the Complaint is unexhausted and should be dismissed for failure to exhaust administrative remedies.

A second grievance is dated June 20, 2009. That grievance relates to the claim of excessive force addressed in the handwritten letter Plaintiff has attached to the Complaint. Although not a claim identified in the section of the Complaint setting forth Plaintiff's counts for relief, pursuant to the liberal rules of construction, the Court finds Plaintiff intends to include this incident as a basis for his claims of excessive force.

---

[5]The Narrative concludes with a statement of "INVESTIGATION FINDINGS" which provides:

Inmate Jason Flow has been in and out of our jail for past 6 years. He knows how to use the policies and procedures in his favor. After I had confronted the inmate with his false grievances, he admitted that the grievance form was the only way that a deputy would talk to him about his court dates.

*Id.*

The record shows that on June 17, 2009, Plaintiff submitted a Request to Staff requesting a video from June 16, 2009, allegedly depicting an altercation between Plaintiff and Defendant Clanahan. *See* Special Report, Exhibit 13 at electronic page 19. Plaintiff claimed in the Request to Staff that Defendant Clanahan used excessive force while Plaintiff was medicated and psychotic. In a Grievance submitted to OCDC officials on June 20, 2009, Plaintiff requested an internal affairs investigation of Defendant Clanahan. Plaintiff states that Defendant Clanahan "attacked" him but provides no further details. *See* Special Report, Exhibit 4 at electronic page 21. The record contains no response form to this grievance.

However, on June 26, 2009, the Oklahoma County Sheriff's Office Internal Affairs Unit conducted an internal investigation. *See* Special Report, Exhibit 14. When asked what his complaint was against Defendant Clanahan, Plaintiff stated that "Clanahan was on PST out of the Vietnam War and had a beef with [Plaintiff] over a Vietnamese girlfriend." The investigating officer commented that Plaintiff "made no sense." Plaintiff also stated that Clanahan had "charged at him saying rude things and then pushed him to handcuff him." *See id*. Plaintiff told the investigating officer to have Clanahan stop teasing him. Based on the interview, the officer closed the file and determined that someone would talk to Clanahan to prevent further incidents with Plaintiff. *See id*.

On the record presented, the Court finds Plaintiff's claim of excessive force against Defendant Clanahan is exhausted. Plaintiff requested an investigation and an investigation

was provided. Moreover, the investigation terminated with a decision to take action favorable to Plaintiff. *Compare Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) (where prisoner is successful in obtaining relief in first stage of grievance process, prisoner is not required to resort to subsequent stages of the grievance process). Therefore, this claim is not subject to dismissal on grounds of failure to exhaust administrative remedies. Nonetheless, as discussed *infra*, the claim lacks merit and summary judgment is proper on other grounds.

### b.  Grievances Related to Access to Courts Claim – Count II

In Count II of the Complaint, Plaintiff claims he has been denied access to the courts. In support of this claim, Plaintiff makes the following allegations:

> Lt. Hanson know for a fact I was vidio [sic] arraigned and was allowed to speak to Judge Hall to explain I was in coustody [sic] at Griffin Memorial Hospital on the day of March 30, 2009, only to be released on March 31, 2009 by a doctor.

*See* Complaint [Doc. #1] at electronic page 4. As noted above, Plaintiff also attaches to the Complaint a handwritten note dated November 9, 2009, wherein he complains that he had two court appearances on the same date, April 7, 2009, that the Oklahoma County Sheriff's Office denied him access to the courts on that date and that he was "falsely represented" by a public defender. *See* Complaint at electronic page 12. In that same handwritten note, he again references a March 30, 2009, court date and states that he was "in custody".

From submissions included in the Special Report, it appears Plaintiff was charged with a failure to appear at a March 30, 2009, court date. It further appears Plaintiff had a

video arrangement on April 7, 2009. *See, e.g.,* Special Report, Exhibit 18, Statement of Lt. Hansen; *see also id.,* Exhibit 20, Report by Danny Honeycutt.

Plaintiff submitted a grievance about these matters on June 7, 2009. *See* Special Report, Exhibit 4 at electronic page 2. On June 11, 2009, Plaintiff's grievance was denied. *See id.,* at electronic page 6. Plaintiff did not take any further action with respect to this grievance. Specifically, he did not file an appeal of the denial of the grievance as required by the OCDC grievance policy. Accordingly, the claim raised in Count II of the Complaint is unexhausted and should be dismissed for failure to exhaust administrative remedies.

### c.    All Remaining Claims are Unexhausted

In addition to Plaintiff's claims of excessive force and denial of access to courts, he makes vague allegations against Defendants Finley and Reeves.[6] He also makes vague allegations against Defendant Whetsel.[7] The grievance record makes clear, however, that Plaintiff did not file any grievances with respect to the vague and conclusory allegations

---

[6]As to Defendant Finley, Plaintiff alleges:

> Lt. Finley said I was a fucking piece of shit, often he was the one to take me to the restroom, on the way to the restroom he would tagunize [sic] me, treaten [sic] me if I urianated [sic] he would humiliate me by leaving in my own uricine [sic] or put a diaper on me.

*See* Complaint at electronic page 11. As to Defendant Reeves, Plaintiff alleges that Reeves "interrupted" Requests to Staff on issues related to recreation, razors, showers and time to clean cells. *See* Complaint at electronic page 11. None of Plaintiff's claims raised in the Complaint relate to these allegations.

[7]Plaintiff's claims against Defendant Whetsel are addressed in more detail, *infra.*

brought against these Defendants.  Accordingly, all remaining allegations made by Plaintiff as to conduct about which he complains during his detention at OCDC, to the extent these allegations can be construed as "claims," are subject to dismissal on grounds of failure to exhaust administrative remedies.

To summarize, Plaintiff's claims of excessive force raised in Counts I and III and his claim of denial of access to courts raised in Count II are unexhausted.  In addition any remaining claims alleged in the Complaint as to conduct about which Plaintiff complains during his detention at OCDC are unexhausted, except for the claim of excessive force against Defendant Clanahan.  Accordingly, those claims should be dismissed on grounds of failure to exhaust administrative remedies.  Moreover, although the claim of excessive force raised against Defendant Clanahan in Count II is exhausted, as discussed *infra*, that claim fails on the merits.

**B.**     **Plaintiff's Excessive Force Claim Against Defendant Clanahan Fails on the Merits**

As set forth, Plaintiff has exhausted administrative remedies for his claim of excessive force against Defendant Clanahan.  Nonetheless, the undisputed factual record demonstrates Defendant Clanahan did not violate Plaintiff's constitutional rights.  Accordingly, Defendant Clanahan is entitled to summary judgment on grounds of qualified immunity.  *See, e.g., Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (qualified immunity is proper at the summary judgment stage if plaintiff fails to demonstrate on the facts alleged that the defendant violated his constitutional or statutory rights).

The "core judicial inquiry" in a case involving a prisoner's allegation that prison guards used excessive force in violation of the Eighth Amendment's prohibition against the unnecessary and wanton infliction of pain is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 320-321 (1986).[8]

To determine whether the use of force "could plausibly have been thought necessary" or instead was "wanton and unnecessary" factors the Court may consider include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officers on the basis of facts known to them; and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321. In addition, the extent of injury suffered by the inmate is a factor to consider, but "[t]he absence of serious injury. . . does not end [the Eighth Amendment inquiry]." *Hudson*, 503 U.S. at 8.

The Complaint alleges that Defendant Clanahan "sprayed him directly in eyes," "kneed" him and "pinned" his arm. *See* Complaint at electronic page 9. Construing

---

[8]As noted, it appears Plaintiff remained a pretrial detainee at the time his excessive force claim arose. As a pretrial detainee, his claim is governed by the Fourteenth Amendment rather than the Eighth Amendment, which governs claims of excessive force by prisoners. *See Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (pretrial detainees are protected from excessive force that amounts to punishment under the Due Process Clause of the Fourteenth Amendment). The same standards apply, however, whether the excessive force claim is brought pursuant to the Eighth Amendment or the Fourteenth Amendment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (the analysis employed to evaluate an excessive force claims, whether it arises under the Eighth or Fourteenth Amendment, is the same).

Plaintiff's allegations with the additional information provided in the Special Report, according to Plaintiff, the incident with Defendant Clanahan occurred on June 16, 2009. When the Oklahoma County Sheriff's office asked Plaintiff for more details about the specific actions of Defendant Clanahan, Plaintiff relayed that Defendant Clanahan "teased him" "charged at him saying rude things" and "pushed him to handcuff him." *See* Special Report, Exhibit 14.

The undisputed factual record establishes that Plaintiff has failed to demonstrate a violation of his constitutional rights. Plaintiff did not allege facts of physical injury or even that Defendant Clanahan's actions put him at risk of serious bodily injury. Nor is there evidence that Defendant Clanahan acted maliciously and sadistically toward Plaintiff. At best, Defendant Clanahan verbally harassed Plaintiff, but this is not enough to support a claim of excessive force. *See, e.g., Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir.1992) (recognizing that "verbal threats and harassment" are generally "excluded from the cruel and unusual punishment inquiry"); *see also Martinez v. Zadroga*, 213 Fed. Appx. 729, 731 (10th Cir. Jan. 24, 2007) (unpublished op.) (prisoner's allegations that prison official "launched a barrage of verbal assaults at him while he was confined in isolation after a suicide attempt" failed to state an Eighth Amendment claim of excessive force); *Sims v. Miller*, 5 Fed. Appx. 825, 830 (10th Cir. Feb. 28, 2001) (unpublished op.) (plaintiff's excessive force claim based on facts showing mere pushing and shoving did not give rise to a federal cause of action). Accordingly, Plaintiff's claim of excessive force against Defendant Clanahan lacks merit and Defendants are entitled to qualified immunity as to this claim.

C.      **Claims Against Defendants Oklahoma County Sheriff's Office and Oklahoma County Detention Center**

Plaintiff has named as Defendants the Oklahoma County Sheriff's Office and the Oklahoma County Detention Center. Dismissal of the Complaint against these Defendants is proper pursuant to Fed. R. Civ. P. 12(b)(6) because they are not suable entities for purposes of 42 U.S.C. § 1983.

Rule 17(b) of the Federal Rules of Civil Procedure provides that a non-corporate entity's capacity to be sued is determined by the law of the state in which the district court is located. Fed. R. Civ. P. 17(b). In Oklahoma, each organized county can sue and be sued. Okla. Stat. tit. 19, § 1. The authority of each Oklahoma county is exercised by its board of county commissioners, Okla. Stat. tit. 19, § 3, and a lawsuit brought against a county must be filed against the board of county commissioners of the relevant county. Okla. Stat. tit. 19, § 4. A county jail in Oklahoma, as a subdivision of the county in which it is located, has no separate legal identity under Oklahoma law, and therefore Defendants Oklahoma County Sheriff's Office and Oklahoma County Detention Center cannot be sued in this Court. *See Lindsey v. Thomson*, 275 Fed. Appx. 744, 747 (10th Cir. Sept. 10, 2007) (unpublished op.) (affirming dismissal of § 1983 claims against police departments and county sheriff's department, entities with no apparent legal existence); *White v. Utah*, 5 Fed. Appx. 852, 853 (10th Cir. March 1, 2001) (unpublished op.) (affirming dismissal of county jail; although applicable state law provided that county may sue or be sued, no state law supported directing a cause of action directly against a county's subdivisions, including its jails); *Aston*

*v. Cunningham*, No. 99-4156, 2000 WL 796086 at *4 n. 3 (10th Cir. June 21, 2000) (unpublished op.) (affirming dismissal of county jail as defendant in prisoner's § 1983 action on basis that "a detention facility is not a person or legally created entity capable of being sued"); *Reid v. Hamby*, No. 95-7142, 1997 WL 537909 at * 6 (10th Cir. Sept. 2, 1997) (unpublished op.) (holding that "an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 suit"). Accordingly, Plaintiff's Complaint should be dismissed against the Oklahoma County Sheriff's Office and the Oklahoma County Detention Center.

### D. Claims Against Defendants Oklahoma County and Sheriff Whetsel

Plaintiff also names as Defendants Oklahoma County and Sheriff Whetsel. As set forth above, any claims against these Defendants are unexhausted and/or lack merit. In addition, Plaintiff fails to allege facts sufficient to impose liability against these Defendants.

Claims against Sheriff Whetsel in his official capacity are, in essence, claims against Oklahoma County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir.1998) ("[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.")(citation and quotation omitted).

Oklahoma County is liable under 42 U.S.C. § 1983 only if Plaintiff alleges facts demonstrating that he suffered a deprivation of constitutional or other federal rights resulting from (1) an express policy or custom; (2) a longstanding practice or custom; or (3) the conduct of a final policymaker. *See Moss v. Kopp*, 559 F.3d 1155, 1168-1169 (10th Cir. 2009).

Plaintiff states that Defendant Whetsel has "avoid[ed] his duties and responsibilities to maintain [the OCDC]" and has "led the jail in dismay." *See* Complaint at electronic page 11. Plaintiff's allegations are insufficient to state a claim for relief under § 1983. He fails to identify any policy or custom or long-standing practice of the County, and his allegations concerning the conduct of Defendant Whetsel are wholly conclusory.

As to claims against Sheriff Whetsel in his individual capacity, as discussed, those claims are unexhausted and/or lack merit. Moreover, Plaintiff has failed to allege facts demonstrating personal participation by Sheriff Whetsel in any of the alleged wrongful conduct about which he complains. *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) ("[A] supervisory relationship alone is insufficient for liability under § 1983.") (citation omitted); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (section 1983 plaintiff must show that an "affirmative link exists between the [constitutional] deprivation and either the [officer's] personal participation, his exercise of control or direction, or his failure to supervise."). Accordingly, Plaintiff's individual and official capacity claims against Defendant Whetsel and his claims against Oklahoma County should be dismissed for failure to state a claim upon which relief may be granted.

## **RECOMMENDATION**

For the reasons set forth, it is recommended that Defendants' Motions to Dismiss [Doc. ##22-29], construed in part as motions for summary judgment, be granted. Plaintiff has failed to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a), as to the

claims raised in Counts I, II and III and as to any additional claims otherwise raised in the Complaint, and those claims should be dismissed without prejudice. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1139 (10th Cir. 2005) (dismissal for failure to satisfy § 1997e(a)'s exhaustion requirement should ordinarily be without prejudice) (*citing Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003)). As to Plaintiff's claim of excessive force against Defendant Clanahan, Plaintiff has failed to demonstrate a violation of his constitutional rights and Defendants are entitled to summary judgment on grounds of qualified immunity.

In addition to summary judgment being granted on grounds of failure to exhaust administrative remedies, dismissal of the Defendants Oklahoma County Detention Center, Oklahoma County Sheriff's Office, Sheriff Whetsel and Oklahoma County is proper pursuant to Fed. R. Civ. P. 12(b)(6).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file objections to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of this Court by August __20th__, 2010. *See* Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred in this matter and terminates the referral.

ENTERED this __30th__ day of July, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE